USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/18/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MARVEL ENTERTAINMENT, INC. f/k/a
MARVEL ENTERPRISES, INC., a Delaware
corporation, and MARVEL CHARACTERS,
INC., a Delaware Corporation,

            Plaintiff,

   -against-

KELLYTOY (USA), INC.,

           Defendants.
------------------------------------X

08 Civ. 2924 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

    Plaintiffs Marvel Entertainment, Inc. and Marvel Characters, Inc. (collectively "Plaintiffs" or "Marvel") own a library of over 5,000 proprietary characters, including SPIDER-MAN, X-MEN, IRON MAN, THE FANTASTIC FOUR, and CAPTAIN AMERICA. (Pls.' 56.1 Stmt., ¶3.) Kellytoy (USA), Inc. ("Kellytoy" or "Defendant") is engaged in the business of designing and selling toys and sporting goods. (Def.'s 56.1 Stmt., ¶3.) Plaintiffs bring this action for, <u>inter alia</u>, breach of contract, copyright infringement, and trademark infringement arising out of Defendant's production and sale of goods purportedly beyond the scope of the license agreement in effect between the parties. Defendant counterclaims for the return of funds it allegedly paid Marvel by mistake. Both parties move for partial summary judgment. For the reasons stated herein, both parties' motions are GRANTED in part and DENIED in part.

I.  BACKGROUND

Except where noted, the following facts are undisputed. During the period from 2000 to 2007, Kellytoy and Marvel entered into three separate license agreements and four separate amendments to those agreements. (Def.'s 56.1 Stmt., ¶4.) The license agreements granted Kellytoy a limited license to exploit certain Marvel characters in connection with a specific list of licensed products. (Pl.s' 56.1 Stmt., ¶8.) Marvel hired the accounting firm of Gingold & Company ("Gingold") to audit Kellytoy's books and records relating to its sales of Marvel products. (Def.'s 56.1 Stmt., ¶6.) Gingold prepared a written report covering the period of October 1, 2003 through December 31, 2007 (the "Gingold Report") (Def.'s 56.1 Stmt., ¶7.) Plaintiffs base their claims on the purportedly unauthorized sales identified in the Gingold Report.

The audit of Kellytoy's books and records found that Kellytoy sold pet toys, bat and ball sets, and hockey sets. (Pls.' 56.1 Stmt., ¶¶18, 25; Besceglie Dec., Ex. 4, § 1, Sch. 1.) The sales of pet toys took place from the first quarter of 2004 through the second quarter of 2006, and the sports article sales took place in 2007. (Besceglie Dec., Ex. 4, § 1, Sch. 1.) Kellytoy does not dispute that it made those sales. (Pls.' 56.1 Stmt., ¶¶19, 25.)

Kellytoy claims that the July 2, 2002 Amendment to License Agreements D0057 and D01003 included "plush and vinyl" pet toys, and that Marvel approved the sales of pet toys that they now

claim were unauthorized. (Def.'s 56.1 Stmt., ¶¶9-17.) Plaintiffs rely on License Agreement D04200, which had a stated term commencing on January 1, 2005 and expiring on December 31, 2007. (Pls.' 56.1 Stmt., ¶9.) With regard to pet toys, Plaintiffs argue that Jonathan Kelly, the Senior Vice President of Kellytoy (Kelly Decl. Supp. Def.'s Mot. Partial Summ. J., ¶1), testified at his deposition that "Pet toys was in a previous agreement. That we no longer had," and that Kellytoy "didn't renew pet toys on [License Agreement D04200]." (Pls.' 56.1 Stmt., ¶26; Bisceglie Decl., Ex. 1, 113:22-23, 114:8-9.)

With respect to the hockey sets and bat and ball sets, Kellytoy claims that the January 1, 2006 Amendment to License Agreement D4200 included "amusement play balls and sports balls (individual or in sets)," and that Marvel approved the sales it now claims were unauthorized. (Def.'s 56.1 Stmt., ¶¶19-22.) Plaintiffs claim that neither the License Agreement or any of its amendments gave Defendant the right to sell bat and ball or hockey sets. (Pls.' 56.1 Stmt., ¶¶ 20-21.)

Additionally, the Gingold Report found that Kellytoy made shipments to Spain, France, Panama, Nicaragua, El Salvador, Australia, Mexico, and China, in violation of the License Agreement, which restricted Kellytoy to sales in the "United States, its territories and possessions, all US military bases, and Canada." (Pls.' 56.1 Stmt. ¶¶30-37.) Kellytoy claims that if such sales were made, they were made not by Kellytoy, but by Kellytoy Worldwide, which is a separate company that is not a

party to this action. (Decl. Kelly Opp. Pls.' Mot. Summ. J., ¶39.)

Finally, Marvel finds fault with Kellytoy's website, which listed "Spider-Man" and "Spiderman III" in a biographical section describing Kellytoy's licensing activities. (Pls.' 56.1 Stmt., ¶¶42-43; Bisceglie Decl., Ex. 2.) Kellytoy concedes that it never sold or offered for sale any "Spiderman III" "Spider-Man 3" products, and claims that the use was a typographical error. (Def.'s 56.1 Stmt., ¶43.)

## II. DISCUSSION

### A. The Summary Judgment Standard

A district court will grant summary judgment only when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's

favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court must always "resolv[e] ambiguities and draw [ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 252), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

These same standards apply where, as here, there are cross-motions for summary judgment. Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc., 88 F. Supp. 2d 188, 193 (S.D.N.Y. 2000). A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting

Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981))

B. Evidentiary Objection

Defendant objects to any use of the Declaration of Eli Bard, which Plaintiffs submit in support of their Motion for Summary Judgment, on the grounds that Mr. Bard was not produced for deposition as a 30(b)(6) witness. The facts and exhibits contained in the Bard Declaration appear elsewhere in the record, so this Court will not consider the Bard Declaration for purposes of this Motion for Summary Judgment. Defendants shall have thirty days from the date of this Order to depose Mr. Bard in preparation for trial.

C. Breach of Contract for Sale of Unlicensed Goods

Plaintiffs and Defendant move for summary judgment on Plaintiffs' First Claim for Relief, which is a breach of contract claim arising out of Kellytoy's purportedly unlicensed sale of pet toys, bat and ball sets, and hockey sets. (See Am. Compl., ¶¶31-39.) The parties do not dispute that the sales occurred, only whether they were licensed. (Pls.' 56.1 Stmt., ¶¶19, 25.)

   i. Pet Toys

With regard to the pet toys, there are no genuine issues of material fact for trial. Kellytoy claims that the sales were authorized in an Amendment to License Agreements D0057 and D01003 that included "plush and vinyl pet toys" as "Licensed Articles," (Def.'s Mem. Opp. Pls.' Mot. Summ. J., 4), but the license

6

agreements Kellytoy cites, as amended, have an expiration date of December 31, 2004 for domestic sales. (Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., ¶¶12-13, Ex. B.) Marvel argues only that pet toys were not included in License Agreement D04200, which commenced on January 1, 2005. (Pls.' 56.1 Stmt., ¶¶9, 20-21.) As to the 2004 sales, Marvel concedes that "the expiration date of any possible right Kellytoy had to sell the pet toys in question here was December 31, 2004." (Mem. L. Opp. Def.s' Mot. Summ. J., 1.) Accordingly, there is no issue of fact for trial and Kellytoy is entitled to summary judgment on Plaintiff's First Claim for Relief with respect to the sales of pet toys that took place in 2004.

For the sales of pet toys that took place in 2005 and 2006, Jonathan Kelly's deposition testimony makes clear that pet toys were not included in License Agreement D04200, which became effective on January 1, 2005. (Pls.' 56.1 Stmt., ¶26; Bisceglie Decl., Ex. 1, 113:22-23, 114:8-9; Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., ¶21.) Yet, Kellytoy claims that the pet toys were "licensed and approved by Marvel." (Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., ¶21.) In support, Kellytoy attaches forms showing that Marvel approved certain pet toy designs. (Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., Ex. F.) The approval forms, however, date from 2002 and 2003, and are not probative of Kellytoy's rights to sell pet toys under the License Agreement in effect in 2005 and 2006. Furthermore, the approval forms themselves explicitly state that "Approval of

7

licensee's artwork or product samples does not constitute approval of or permission to produce a product not expressly authorized pursuant to licensee's agreement. Nor shall it ever act or be construed as an amendment or modification of the license agreement." (Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., Ex. F., Bates p. 3729.) In light of Jonathan Kelly's deposition testimony and the plain text of the approval forms, no reasonable trier of fact could find in favor of Kellytoy with respect to the sales of pet toys in 2005 and 2006. Summary judgment must be granted for Plaintiffs with respect to Plaintiff's First Claim for Relief for those sales.

 ii. Bat and Ball Sets and Hockey Sets

Kellytoy claims that its sales of bat and ball sets and hockey sets were authorized by an amendment to License Agreement D04200-1, signed by the parties on May 31, 2006 (but effective as of January 1, 2006), which included "Amusement Play Balls and Sports Balls (individual or in sets, inflatable and non-inflatable)" as "Licensed Articles." (Def.'s 56.1 Stmt., ¶19; Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., Ex. G.) Under New York law, which governs the construction of the License Agreement (See Bard Decl., Ex. 1, Bates p. 32), "the key inquiry at the initial stage of interpreting a contract is whether it is ambiguous with respect to the issue disputed by the parties. Bank of New York v. First Millennium, Inc., 607 F.3d 905, 914 (2d Cir. 2010). "The matter of whether the contract is ambiguous is a question of law for the court." Law Debenture Trust Co. of New

York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010). "An ambiguity exists where the . . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley Group Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (internal quotation marks omitted). "Summary judgment is generally inappropriate where the contested contractual language is ambiguous." Bank of New York, 607 F.3d at 914 (citing Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006).

Examining the agreement as a whole, this Court finds that the License Agreement is ambiguous as to whether bat and ball sets or hockey sets are included within the license for "Amusement Play Balls and Sports Balls (individual or in sets, inflatable and non-inflatable)." The list of "Licensed Articles" includes such items as "Amusement Plush Bean Bags," "Amusement Flags and Banners," and "Amusement Novelty Chairs." The License Agreement does not explain the exact parameters of the items, and the parties have not provided the Court with evidence that such terms bear meanings commonly understood in the industry.

Where the contract is ambiguous, extrinsic evidence may be used as a guide to interpretation of the agreement. Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 69 (2d Cir. 2008). The extrinsic evidence provided here, however, is conflicting.

9

The Court notes that the approval forms submitted to Marvel for the bat and ball sets at the concept stage contained the disclaimer about the license agreement, but the form with the final approval contained no such disclaimer. (Decl. Kelly Supp. Def.'s Mot. Partial Summ. J., Ex. H, Bates p. 3739, 4026.) Secondly, the field filled out by Defendant Kellytoy under "Category" specifically states "Amusement Play Balls and Sports Balls," and lists the contract number, and it was approved. (Id., Bates p. 3739.) While Jonathan Kelly was deposed on specifically where the License Agreement gave Kellytoy the right to produce bat and ball sets and he could not identify the provision, (Bisceglie Decl., Ex. 1, 113:4-117:25)[1], a credible argument could be made that, as the approval form stated, bat and ball sets fell within the category of "Amusement Play Balls and Sports Balls." However, on the evidence before it, where the term "Amusement Play Balls and Sports Balls" is not defined, this is ultimately a genuine issue of material fact to be determined by a jury.

Given that the terms of the contract are ambiguous and interpretation of the contract would require credibility determinations, summary judgment is inappropriate. Liberty

---

[1] Marvel argues that Jonathan Kelly testified conclusively that the License Agreement, as amended, did not authorize sales of bat and ball or hockey sets. (Mem. L. Opp. Def.'s Mot. Summ. J., 5.) The testimony, however, is not so conclusive. Jonathan Kelly testified only that bat and ball sets were not specifically listed, but that he was sure an amendment gave Kellytoy that right. (Bisceglie Decl., Ex. 1, 113:4-117:25.)

Surplus Ins. Corp. v. Segal Co., 142 Fed. App'x 511, 513 (2d Cir. 2005). Both motions for summary judgment must be denied with respect to the bat and ball sets and hockey sets.

iii. Damages

Plaintiffs argue they are entitled to damages on their First Claim for Relief for Breach of Contract of at least the difference between the amount of the unlicensed sales and the royalty Kellytoy paid to Marvel for those sales. (Mem. L. Supp. Pls.' Mot. Summ. J., 7.) Marvel points to no contract provision or standard of law, however, that would allow this Court to calculate damages for sales of unlicensed goods. Marvel relies without explanation on the "net sales" calculation that Section 3(b) of the License Agreement specifically provides for sales outside of licensed territories. Summary judgment is therefore inappropriate on the issue of damages for sales of unlicensed items.

D. Breach of Contract - Royalties

Marvel claims that Kellytoy breached the License Agreement because it accounted for and paid royalties on certain sales incorrectly. (Mem. L. Supp. Pls.' Mot. Summ. J., 7.) Jonathan Kelly admitted at his deposition that some of the auditor's findings on royalties were correct. (Bisceglie Decl., Ex. 1, 142:9-145:24.) In its moving papers, Kellytoy admits that royalties were calculated incorrectly, but claims that the result was an overpayment, as opposed to an underpayment, to Marvel.

11

(Decl. Kelly Opp. Pls.' Mot. Summ. J., ¶¶ 24-27.) Accordingly, Marvel is correct that summary judgment is appropriate as to liability for miscalculating royalties. Damages, if any, are to be determined by the trier of fact.

E.  Breach of Contract - Sales Outside the Licensed Territory

Marvel moves for summary judgment on its claim that Kellytoy breached the License Agreement by making sales outside of the United States. Specifically, Section 3(b) of the License Agreement provides that "[t]he license hereby granted extends only to the Territory identified in Section 1(d)(i)," which in this case, was the "United States, its territories and possessions, all US military bases, and Canada." (Mem. L. Supp. Pls.' Mot. Summ. J., 8.) Kellytoy's arguments that its extraterritorial sales did not violate the License Agreement are not persuasive given the unambiguous language of the contract. See Law Debenture Trust Co., 595 F.3d at 465. Whether the articles were "seized by customs," sold "solely for sample purposes," "invoice[d]" to a customer in Panama, sold to another Marvel licensee, "drop shipped" to a United States customer's overseas customer, or "delivered" to an overseas company for re-sale in the United States, (Def.'s Mem. Opp. Pls.' Mot. Summ. J., 4-6), Kellytoy's actions exceeded the scope of its unambiguous license. Kellytoy's arguments that the sales were actually made by a related entity (See Decl. Kelly Opp. Pls.' Mot. Summ. J., ¶39) are likewise not persuasive, especially given that Kellytoy never argues that the related entity had a license covering such

sales. Marvel is entitled to summary judgment on its claim for breach of contract for sales outside of licensed territories.

F.  Enforceability of Paragraph 3(b)

Defendants move for summary judgment on the grounds that Paragraph 3(b) of the License Agreement is an unenforceable penalty provision. (Def.'s Mem. Supp. Mot. Partial Summ. J., 7-12.) Paragraph 3(b) provides:

> In the event that Licensee [Kellytoy] sells or exploits the Licensed Articles outside either the Territory or Channels of Distribution in violation of this Section 3(b), notwithstanding Sections 1(o) and 5(a), the royalty due Marvel on such sales shall be the Net Sales. In addition, in the event Licensee sells or distributes the Licensed Articles outside the Channels of Distribution, Licensee shall pay to Marvel, a sum in the amount of three ($3) per unit sold outside of the Channels of Distribution as Liquidated Damages, unless otherwise prohibited by law.

The enforceability of a liquidated damages provision is a question of law, but the party seeking to avoid a liquidated damages provision bears the burden of proving that the provision is in fact a penalty. JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d 373, 379 (N.Y. 2005) (finding that plaintiff was not entitled to judgment as a matter of law where it failed to present evidence that liquidated damages were grossly disproportionate or that actual damages were capable of precise estimation at the time of the agreement's execution.)

Here, Kellytoy has not met that burden. Kellytoy argues that at worst, Marvel's damages from unlicensed sales are equal to the amount it would have earned from another licensee in

13

royalties, or the amount of profit Marvel itself would have earned had it exploited the relevant market on its own. (Def.'s Mem. Supp. Mot. Partial Summ. J., 11.) Nevertheless, Kellytoy provides no evidence that liquidated damages according to paragraph 3(b) would not approximate such lost royalties or profits. Another licensee, by way of example, may have much higher sales than Kellytoy, such that the lost royalties from that licensee would approximate Kellytoy's net sales.

Furthermore, Kellytoy has not provided evidence that damages were capable of estimation at the time the parties entered into the License Agreement. Where a manufacturer produces products bearing another's trademark without a license, courts have recognized routinely that damages are difficult or impossible to estimate. See, e.g., Bus. Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 406 (2d Cir. 1989); Warner Bros. Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989); Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage, Inc., 704 F. Supp. 2d 288, 290 (S.D.N.Y. 2010).

Defendant's Motion for Summary Judgment must be denied with respect to paragraph 3(b).

G.  Breach of Contract - Accounting for Sell-off Period

Kellytoy moves for summary judgment on Marvel's Third Cause of Action for Breach of Contract, in which Marvel alleged that Kellytoy had failed to provide an accounting of sales made after December 31, 2007. (See Am. Compl., ¶¶47-52.) Kellytoy contends

that it provided such an accounting to Marvel on or about April 25, 2008. (Decl. Kelly Supp. Def.'s Mot. Summ. J., Ex. I.)

Since Kellytoy has pointed to specific facts in the record showing that it provided the required accounting, Marvel must "'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Marvel, however, has failed to point to any facts in the record that would tend to show that the accounting was incomplete or that Kellytoy obstructed an audit. Kellytoy's Motion for Summary Judgment must be granted with respect to Marvel's Third Claim for Relief.

H. Breach of Implied Covenant

Kellytoy moves for summary judgment on Marvel's Fourth Claim for Relief, which is a claim for breach of duty of good faith and fair dealing under New York common law. (Def.'s Mem. Supp. Mot. Partial Summ. J., 13.) Where, as here, claims for breach of the duty of good faith and fair dealing are based on the same facts as a claim for breach of contract, (see Am. Compl., ¶ 53), those claims must be dismissed as duplicative. Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."); Deutsche Bank Sec. Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). Marvel does not oppose Defendant's Motion

for Summary Judgment as to Marvel's Fourth Claim for Relief, and that Motion is granted.

I.  Trademark and Copyright Infringement

Kellytoy claims that this Court lacks subject matter jurisdiction over Marvel's Sixth and Seventh claims for relief, which are copyright and trademark claims related to sales of Marvel products outside of the territories listed in the License Agreement.  (Def.'s Mem. Supp. Mot. Partial Summ. J., 15-21.)  As this Court found above, Kellytoy's claims that a related overseas entity that was not a party to the License Agreement was responsible for the overseas sales is without merit. Accordingly, this Court cannot conclude on the record before it that no infringing activities occurred in the United States. Defendant's Motion for Summary Judgment is denied with respect to Plaintiffs' Fifth Claim for Relief for copyright infringement and Sixth Claim for Relief for trademark infringement.

J.  General Business Law Claims

Kellytoy moves for summary judgment with respect to Marvel's Eighth Claim for Relief under New York General Business Law § 360.  Marvel, citing New York General Business Law § 360-m, seeks (1) an order requiring Defendant to deliver infringing articles for destruction; (2) disgorgement of Defendant's profits; (3) damages; (4) treble damages; and (5) costs and attorney's fees.  (Am. Compl., 19-20.)  It is undisputed, however, that Marvel did not register its trademarks in New York.

16

(Pls.' Resp. Obj. ¶54.) Remedies are available under § 360-m only to those owners of marks registered with the New York Secretary of State. See N.Y. Gen. Bus. L. § 360-(d); § 360-(m). Accordingly, Defendant's Motion for Summary Judgment must be granted with respect to Plaintiffs' Eighth Claim for Relief.

K. Liability for Attorney's Fees

Marvel moves for partial summary judgment on its claim for liability as to attorney's fees incurred in pursuing the breach of contract claim, as set forth in Section 17(c) of the License Agreement. (Mem. L. Supp. Pls.' Mot. Summ. J., pp. 11-12.) Plaintiff's motion is granted only with respect to fees incurred in this action related to the sale of pet toys in 2005 and 2006, and the sales of goods outside of the licensed territories. As to all other claims, summary judgment is inappropriate at this stage in the case.

L. Use of a Counterfeit Trademark

Marvel moves for summary judgment on its sixth claim for relief, which seeks statutory damages for Kellytoy's use of a counterfeit trademark. (Mem. L. Supp. Pls.' Mot. Summ. J., 12.) Specifically, Marvel claims that after the expiration of the License Agreement, when Kellytoy had no right to sell articles bearing any of Marvel's intellectual property, Kellytoy's website represented that Kellytoy had the rights to sell "Spider-Man" and "Spiderman 3." (Id.) Such use, Marvel claims, "is likely to cause confusion, mistake or deception among consumers as to

17

whether Kellytoy's goods are approved by Marvel." <u>Id.</u> Kellytoy does not dispute that its website listed Spiderman III, but points out that the reference appeared only in a biographical information section about Kellytoy. (Def.'s Mem. Opp. Pls.' Mot. Summ. J. 7-8.)

This Court finds that summary judgment is inappropriate as to the statutory damages claim because there is a genuine issue of material fact as to whether Kellytoy used Marvel's trademark "in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). Marvel alleges that Kellytoy "purported to own the rights to sell 'Spider-Man' and 'Spiderman 3.'" (Mem. L. Supp. Pls.' Mot. Summ. J., 12.) It is not clear from the website printout, however, that Kellytoy offered any "Spider-Man" or "Spiderman 3" rights, goods, or services for sale. The printout from the Kellytoy website uses the "Spider-Man" and "Spiderman 3" terms in a section that describes Kellytoy's licensing activities. (<u>See</u> Bisceglie Decl., Ex. 2.) The paragraph does not necessarily imply that Kellytoy's license was in effect at that time. Furthermore, although Kellytoy was not licensed to sell Spiderman III merchandise, Marvel's registered trademark is for "Spiderman," which Kellytoy was licensed to sell during the parties' relationship. (<u>See, e.g.</u>, Decl. Kelly Opp. Pls.' Mot. Summ. J., Ex. H.) Plaintiffs' motion for summary judgment on its statutory damages claim is denied.

M.  Waiver of Counterclaims

Marvel moves for summary judgment on Kellytoy's counterclaims, arguing that Kellytoy waived the right to assert counterclaims in the License Agreement. The License Agreement, states that Kellytoy "Waives all right to trial by jury in any summary or other action, proceeding or counterclaim arising out of or in any way connected with this agreement, <u>and any claim for injury or damages</u>." (emphasis added) (Mem. L. Supp. Pls.' Mot. Summ. J., 14.)

The phrase "any claim for injury or damages" cannot, as Marvel contends, be read to waive the right to assert counterclaims. This is especially apparent given the previous phrase, "proceeding or counterclaim arising out of or in any way connected with this agreement," which explicitly acknowledges that counterclaims may arise out of or be connected with the License Agreement. Marvel's motion for summary judgment must be denied with respect to Kellytoy's counterclaims.

III.  CONCLUSION

Plaintiffs' Motion for Summary Judgment is GRANTED as to sales of pet toys in 2005 and 2006, sales of articles outside of the licensed territories, liability for associated attorney's fees, and liability for miscalculating royalties. Plaintiffs' Motion is DENIED in all other respects.

Defendant's Motion for Summary Judgment is GRANTED as to

sales of pet toys in 2004, and Plaintiffs' Third, Fourth and Eighth Claims for Relief. Defendant's Motion is DENIED in all other respects.

Parties shall submit their Proposed Voir Dire Questions and Proposed Requests to Charge to this Court, in conformity with the Court's Individual Practices, no later than sixty days from the date of this Order. Parties shall file their Joint Pre-Trial Statement ("JPTS") and respective Memoranda of Law addressing the issues raised in the JPTS within sixty days of the date of this Order. Responses to the Memoranda of Law shall be submitted no later than fourteen days after being served with the Memoranda of Law. There shall be no replies.

SO ORDERED.

Dated:   New York, New York
         February 18, 2011

                                    _____
                                    DEBORAH A. BATTS
                                    United States District Judge